# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ERNEST T. PETTY,

      Petitioner,

v.                            Case No. 8:04-CV-2571-T-30EAJ

WALTER A. MCNEIL[1],

      Respondent.

_____/

# ORDER

Petitioner, a State of Florida inmate proceeding *pro se*, petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 and challenges the validity of his conviction for robbery (Dkt. #1). Petitioner challenges his conviction on grounds of a denial of his rights to a fair trial, effective assistance of counsel, equal protection and due process. The Respondent argues that Petitioner's claims are procedurally barred, fail to present a federal constitutional issue, or fail to meet the threshold requirements of 28 U.S.C. § 2254 (d) and (e).

Petitioner was convicted and sentenced to twenty years' imprisonment as a habitual violent felony offender. The state appellate court affirmed Petitioner's judgment and sentence (Dkt. #11, Ex. 4). Petitioner's subsequent state Rule 3.800 motion to correct an

---

[1] Walter A. McNeil, Secretary of the Florida Department of Corrections, is substituted as the party respondent. Fed. R. Civ. P. 25(d).

illegal sentence (Dkt. #11, Ex. 6), state petition for the writ of habeas corpus (Dkt. #11, Ex. 10), and state Rule 3.850 motion (Dkt. #11, Ex. 14) were denied (Dkt. #11, Exs. 7, 8, 13, 15, 18). Petitioner appealed (Dkt. #11, Ex. 19) the denial of his Rule 3.850 motion. The state appellate court affirmed (Dkt. #11, Ex. 22) and Petitioner's Section 2254 petition followed.

## STANDARD OF REVIEW

Because this action commenced after April 24, 1996, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the

state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

Petitioner has the burden of overcoming a state court factual determination by clear and convincing evidence.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). Petitioner's petition is subject to the provisions of the AEDPA because his conviction was entered after the AEDPA was enacted.  Consequently, a presumption of correctness attaches to the finding of fact in the trial court's rejection of Petitioner's claims.

## FACTS[2]

On May 30, 1997, Lindsay Brown ("Brown") was working at the Classic Cleaners Dry Cleaning.  A man entered the store and began to tell her about an alleged problem on the building's roof.  A few moments into the conversation, the man demanded Brown give him the money from the cash register.  Brown opened the register and started taking money out as the man repeatedly told her he had a gun and was going to shoot her.  After giving the man the money, the man directed Brown to the back of the store and told her to lie down on the floor and not look at him or he would shoot her.  The man then ordered Brown into the bathroom.  While Brown was in the bathroom, the man fled.  The store manager, who had been away from the store temporarily, returned and called police.  Brown gave the police a description of the robber.  Several weeks later, Brown was shown a photo pack by police from which she identified Petitioner as the robber.  After further investigation, Petitioner was arrested and charged with armed robbery.

**Ground One**

Petitioner alleges a denial of his right to a fair trial due to the trial court's denial of his motion to suppress Brown's in-court and out-of-court identifications of Petitioner.  In his motion to suppress, Petitioner claimed that Brown "could identify [Petitioner] only after having been tainted by the impermissibly suggestive out-of-court identification procedure that relied on [an] unnecessarily suggestive photo pack . . . ." (Dkt. #11, Ex. 1, p. 21).[3]

---

[2]  This summary of the facts derives from Petitioner's brief on direct appeal (Dkt. #11, Ex. 1).

[3]  Petitioner relies upon his appellate brief (Dkt. #11, Ex. 1) to support his federal habeas claims.

Following a hearing on the motion to suppress, the trial court entered a written order denying

the motion.[4]  The state appellate court denied this claim on direct appeal.

"[A] pretrial identification by photograph will be set aside . . . only if the photographic

identification procedure was so impermissibly suggestive as to give rise to a very substantial

likelihood of irreparable misidentification."  *Simmons v. United States*, 390 U.S. 377, 384

(1968).  "[R]eliability is the linchpin in determining the admissibility of identification

testimony . . . ."  *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).  "Factors to be considered

in determining whether the identification was reliable include: (1) opportunity to view; (2)

degree of attention; (3) accuracy of the description; (4) level of certainty; and (5) length of

time between the crime and the identification."  *United States v. Diaz*, 248 F.3d 1062, 1102

(11th Cir. 2001) (*citing Neil v. Biggers*, 409 U.S. 188, 199 (1972)).

Even assuming, *arguendo*, that the out-of-court identification procedure was

impermissibly suggestive, given Brown's identification of Petitioner at the suppression

---

[4]  The trial court held:

The Court finds based upon the testimony of witnesses at the hearing, and the photo pack attached as State's Exhibit to the Motion Hearing, that the identification by Lindsay Brown did not create a substantial likelihood of misidentification as a result of her viewing the photo pack and that the photo pack was not unduly suggestive.

The Court finds that the witness, Lindsay Brown, testified articulately during the Motion hearing, that she had a close, well-lighted view of the Defendant for a lengthy period and that she gave the police who interviewed her immediately after the robbery a description consistent with the appearance of the Defendant and that she was visibly shaken in the Court when the witness demonstrated the verbal words that she had advised law enforcement that [sic] were used in the crime against her.  The Court further finds that her testimony describing what was said to her and the speech patterns of the Defendant were similar to the Defendant's speech patterns heard by the Court and that the witness, Lindsay Brown's, ability to accurately communicate and convey the voice and mannerisms of the Defendant in her testimony is consistent with her training as a singer, it is therefore ORDERED AND ADJUDGED that said . . . Motion is hereby DENIED.

(Dkt. #11, Ex. 24, Vol. I, pp. 81-82).

hearing, the out-of-court identification procedure did not "give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. at 384. Brown testified that she observed Petitioner while he was speaking to her. Brown was face-to-face with Petitioner at a close distance for several minutes in a well-lit room (Dkt. #11, Ex. 24, Vol. I, pp. 20-25). No other customers were in the store during the robbery and no other obstructions or distractions hindered Brown's view of Petitioner. Brown's description of the robber to police immediately following the robbery[5] was reasonably accurate and Brown testified that she was " a hundred percent" certain of her identification of Petitioner's photo when she viewed the photo pack on July 30, 1997 (Dkt. #11, Ex. 24, Vol. I, pp. 4, 29-31). Brown described the robber as having blond hair. The photopack, comprised of six photographs, contained only one photo of an individual with blond hair. Nevertheless, Brown testified that this fact did not stand out to her because she relied on the robber's facial features in making the identification.[6] Considering all of these factors collectively, Brown's pretrial identification was reliable. *See Neil v. Biggers*, 409 U.S. 199. Accordingly, Petitioner fails to meet his burden of proving that the state court's

---

[5] Brown testified that "as soon as the police came I told them I could a hundred percent I.D. from head to toe" (Dkt. #11, Ex. 24, Vol. I, p. 25).

[6] Brown testified on cross-examination as follows:

DEFENSE COUNSEL: Okay. But it's also true when you looked at the photopack [sic] and if you remembered nothing else but that the man has blond hair it's pretty obvious that five out of the six pictures don't even come close to the description?

BROWN: But that's not what [sic] he stood out about to me. It was his facial cheekbones that stood out was why I identified him a hundred percent, in the eyes.

(Dkt. #11, Ex. 24, Vol. I, p. 39).

determination is an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts.

**Grounds Two and Three**

In ground two, Petitioner alleges that an unfairly prejudicial booking photo compromised his right to a fair trial. Specifically, Petitioner contends that he "was substantially prejudiced by the erroneous admission of a booking photo since the photo went to unfairly bolster the alleged victim's in-court misidentification, which had already been unfairly tainted by the impermissibly suggestive photo pack . . . ." (Dkt. #1, p. 6). In ground three, Petitioner alleges a denial of his right to a fair trial when the trial court admitted testimony about Petitioner's past encounters with police. Specifically, Petitioner contends that "[t]he trial court denied the defense motion for mistrial, based on admitting testimony regarding Petitioner's subsequent encounter with police[7] that unfairly placed Petitioner's character in issue by depicting him as a bad actor with criminal propensities" (Dkt. #1, p. 8).

Petitioner presented these claims on direct appeal based on state law grounds only and failed to allege the violation of a federal constitutional right. Before a federal court may grant habeas relief, a federal habeas petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1)(A), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he

---

[7] Petitioner, using the name "David Lee Letson," was arrested after a minor traffic accident two days after the robbery. Officer Brett Hodgson, the officer who had contact with "Letson" at the accident, identified Petitioner at trial as the man involved in the accident using the name "David Lee Letson" (Dkt. #11, Ex. 24, Vol. III, p. 144).

presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. at 842.  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted)).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt v. Jones*, 348 F.3d 1355, 1358 (11th Cir. 2003).

A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d at 1358-59 (*quoting O'Sullivan v. Boerckel*, 526 U.S. at 845).  To exhaust a claim, a petitioner must present the state court with the particular legal basis for relief in addition to the facts supporting the claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (*quoting Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief.  *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

Petitioner failed to present the federal component of grounds two and three to the state court on direct appeal. Consequently, he deprived the state courts of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. at 845. A federal court cannot grant a Section 2254 petition unless the petitioner has exhausted every available state court remedy. *Snowden v. Singletary*, 135 F.3d at 735. Petitioner's exclusively state law arguments presented on direct appeal leave the exhaustion requirement unsatisfied. *Duncan v. Henry*, 513 U.S. at 365. *See also Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"). Grounds two and three remain unexhausted and, therefore, elude federal review.

Neither can Petitioner return to state court to present his federal claims. Because he could have raised and preserved a federal constitutional claim on direct appeal, Petitioner was precluded from doing so collaterally in a Rule 3.850 motion. *See e.g.*, *Childers v. State*, 782 So.2d 946, 947 (Fla. 4th DCA 2001) ("The law is clear that where an issue could have been raised on direct appeal, it is not the proper subject for a Rule 3.850 motion.") (citations omitted). The state procedural rules also preclude a second direct appeal. Consequently, grounds two and three are procedurally defaulted.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Pursuant to the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d at 1138. To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). In other words, he must show at least a reasonable probability of a different outcome. *Henderson v. Campbell*, 353 F.3d at 892; *Crawford  v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. at 495-96; *Henderson v. Campbell*, 353 F.3d at 892. "A 'fundamental miscarriage of justice' occurs in an extraordinary case where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at 892.

This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Petitioner fails to demonstrate cause and prejudice excusing his default.  Petitioner has neither alleged nor shown that the fundamental miscarriage of justice exception applies. Because Petitioner fails to proffer specific facts showing an exception to procedural default, *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), grounds two and three are procedurally barred from federal review.[8]

Even if these claims were not procedurally barred, Petitioner would not be entitled to relief.  An evidentiary ruling by the trial court is matter of state law and is not cognizable on federal habeas corpus review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. at 67 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

**Ground Four**

Petitioner alleges a denial of his right to a fair trial due to a *Brady*[9] violation. Petitioner contends that the trial court erred by failing to find a discovery violation after a

---

[8] To the extent these claims might allege a federal due process violation, no relief is warranted.  The limitation on federal habeas review to claims of federal constitutional error applies with equal force when a petition, which actually involves state law issues, is couched in terms of a Fourteenth Amendment due process violation. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976).

[9] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (failure of prosecutor to turn over evidence favorable to a defendant violates due process where the evidence is material to either guilt or punishment).

State witness used a handwritten field investigation report to refresh his memory.  Petitioner argues that the report was not provided to the defense during discovery.

On appeal, Petitioner argued that "the trial court committed prejudicial reversible error by ruling that the failure of the state to turn over a copy of the handwritten field investigation report did not constitute a discovery violation" (Dkt. #11, Ex. 1).  Petitioner presented his claim in state law terms only.   Petitioner neither asserted a violation of a federal constitutional right nor presented a substantive argument that the State violated *Brady* or Petitioner's due process rights with respect to exculpatory evidence.  Consequently, a federal claim based on *Brady* is unexhausted.  Petitioner cannot return to state court to present the claim because the state procedural rules preclude a second direct appeal.  This claim is procedurally defaulted.  Petitioner fails to demonstrate cause and prejudice excusing his default, and neither alleges nor shows that the fundamental miscarriage of justice exception applies.  Because Petitioner fails to proffer specific facts showing an exception to procedural default, *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), ground four is procedurally barred from federal review.

Even if the claim were not procedurally barred, Petitioner would not be entitled to relief.  A federal court reviews a state discovery violation only if the violation constitutes a denial of fundamental fairness.  *See Machin v. Wainwright*, 758 F.2d 1431 (11th Cir. 1985).  "To constitute a denial of fundamental fairness, the evidence must have been not only erroneously admitted at trial, but also must be 'material in the sense of a crucial, critical, highly significant factor' in the conviction."  *Williams v. Kemp*, 846 F.2d 1276, 1281 (11th

Cir. 1988) (*quoting Jameson v. Wainwright*, 719 F.2d 1125, 1126-27 (11th Cir. 1983) (*per curiam*), *cert. denied*, 466 U.S. 975 (1984)).  *Machin v. Wainwright*, 758 F.2d at 1433-34, held that a "surprise" disclosure did not rise to the level of a federal due process violation. Similarly, in the instant case, Petitioner's allegations fail to show a federal due process violation and no federal habeas relief is warranted.

**Ground Five**

Petitioner alleges a denial of his rights to equal protection and due process due to the trial court's denial of his motion for judgment of acquittal.  On appeal, Petitioner challenged the denial of the motion for judgment of acquittal on sufficiency of the evidence grounds, not equal protection or due process.  To the extent that Petitioner relies upon the argument presented in his appellate brief to support his federal claim, the claim is unexhausted. Petitioner cannot return to state court to present the claim because the state procedural rules preclude a second direct appeal.  Consequently, the claim is procedurally defaulted. Petitioner fails to demonstrate cause and prejudice excusing his default, and neither alleges nor shows that the fundamental miscarriage of justice exception applies.  Because Petitioner fails to proffer specific facts showing an exception to procedural default, ground five is procedurally barred from federal review.

To the extent Petitioner's claim, liberally construed, asserts a sufficiency of the evidence claim, he is not entitled to relief.  Florida courts evaluate a sufficiency of the evidence claim under a legal standard identical to the standard used by federal courts in deciding federal due process challenges to the sufficiency of the evidence.  In evaluating

such a claim, Florida courts assess whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt. *Simmons v. State*, 934 So.2d 1100, 1111 (Fla. 2006); *Lynch v. State*, 293 So.2d 44 (Fla. 1974). This standard is the same as the federal standard for evaluating a due process challenge based on the sufficiency of the evidence. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ( "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (emphasis in original). Because the state and federal claims are the same, Petitioner's sufficiency of the evidence claim is treated as exhausted and not procedurally barred.

To prove the crime of robbery, the State must prove four elements beyond a reasonable doubt: (1) the defendant took the money or property from the person or custody of the victim; (2) force, violence, assault or putting in fear was used in the course of the taking; (3) the property taken was of some value; and (4) the taking was with the intent to permanently or temporarily deprive the victim of her right to the property or any benefit from it or appropriate the property of the victim to the defendant's own use or to the use of any person not entitled to it. Fla. Std. Jury Inst. 15.1.

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship*, 397 U.S. 358, 364 (1970). In a challenge to a state criminal conviction brought pursuant to Section 2254, a petitioner is entitled to habeas relief on a

claim of insufficient evidence "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  "[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.'" *Jackson v. Virginia*, 443 U.S. at 318-19 (*quoting Woodby v. INS*, 385 U.S. 276, 282 (1966) (emphasis in original)).

Sufficiency of the evidence claims are governed by the substantive elements of a criminal offense as defined by state law.  *Jackson v. Virginia*, 443 U.S. at n. 16.  "Although each element of the offense must be established beyond a reasonable doubt, *see Bishop v. Kelso*, 914 F.2d 1468, 1470 (11th Cir. 1990) (*citing Jackson [v. Virginia]*, 443 U.S. at 316) the State is not required to rule out every hypothesis except that of the guilt of the defendant, *see Jackson [v. Virginia]*, 443 U.S. at 326)."  *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001).  If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the State and against the defendant. *Johnson v. Alabama*, 256 F.3d at 1172.  In other words, federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and weighing the evidence. *Johnson v. Alabama*, 256 F.3d at 1172 (*citing Jackson v. Virginia*, 443 U.S. at 326).

At trial, Brown testified that she was working alone at Classic Cleaners Dry Cleaning on May 30, 1997, when a man came into the store.  After talking with Brown for several minutes, the man came around the counter and told Brown to "just give me the money" (Dkt. #11, Ex. 24, Vol. III, p. 39).  The man also told Brown, "this ain't no game.  I got a gun here

and I'm gonna shoot you" (Dkt. #11, Ex. 24, Vol. III, p. 41).  The man told Brown he was

going to shoot her "at least ten times during the entire incident."  Brown was "incredibly

fearful" and based upon the man's threat, Brown opened the register and began removing the

money.  After Brown finished giving the man the money, he ordered her to go to the back

of the store and lie on the floor  (Dkt. #11, Ex. 24, Vol. III, p.44-45).  The man then ordered

Brown into the bathroom and directed her to shut the door.  He told Brown that if she came

out of the bathroom, he would shoot her.  Brown eventually left the bathroom and discovered

that the man had left the store.  Debra Wildridge, manager of the Classic Cleaners, testified

that "just a little under $200" was taken from the register (Dkt. #11, Ex. 24, Vol. III, p. 87).

Brown positively identified Petitioner as the man who robbed her.

After the State rested its case, defense counsel moved for a judgment of acquittal,

asserting that the State had failed to prove a prima facie case of armed robbery (Dkt. #11, Ex.

24, Vol. III, pp. 149-50).  The trial court granted Petitioner's motion for judgment of

acquittal as to the firearm element and reduced the charge to robbery (Dkt. #11, Ex. 24, Vol.

III, p. 152).  Thereafter the defense rested without presenting evidence or witnesses.

Viewing the State's evidence of Petitioner's guilt in the light most favorable to the

State and using the objective reasonableness test, a rational trier of fact could find Petitioner

committed robbery, the crime for which he stands convicted.  The state appellate court's

silent affirmance[10] of Petitioner's conviction was neither an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant

---

[10] The state appellate court's *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).

makes an insufficient showing on one.");  *Sims v. Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland v. Washington*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland v. Washington*, 466 U.S. at 690.  *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland v. Washington*, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that counsel's error prejudiced the defense. *Strickland v. Washington*, 466 U.S. at 691-92.  To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland v. Washington*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Strickland v.*

*Washington*, 466 U.S. at 690-91.  Petitioner cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable. . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

**Ground Six**

Petitioner alleges that his trial counsel rendered ineffective assistance by failing to investigate and call an alibi witness.  Following an evidentiary hearing,[11] the state court rejected this claim as follows:

> In ground one, Defendant argued that counsel was ineffective for failing to investigate or call an alibi witness at trial.  Defendant alleged that he was at his grandmother's old property, talking with the present owner, at the time of the

---

[11]  Petitioner presented four grounds for relief in his Rule 3.850 motion.  The trial court directed the State Attorney to respond to the allegations in ground one of the Rule 3.850 motion (presented as ground six of the instant petition) and denied the remaining three claims.  The State responded  and an evidentiary hearing was held on this claim.

robbery.  Defendant alleged that he told counsel this and provided him with a map to find the property, but counsel never investigated.

On March 7, 2003, the Court held an evidentiary hearing.  At the hearing, Defendant's former counsel, Dudley Clapp, testified that Defendant did, in fact, provide him with a hand-drawn map of a location in Plant City, however counsel believes he checked the map with a real map of the area and found it to be inconsistent.  Counsel stated that Defendant was unable to provide him with an address or even the name of the individual he allegedly spoke with for more that two hours.  In addition, counsel testified that Defendant initially provided an entirely different alibi.  As documented in counsel's file on July 21, 1998,[12] Defendant first told his attorney that he was in Largo, painting a sign at a pizza place, at the time of the robbery.  Defendant, however, could not recall that name or address of the business.  Counsel testified that investigators were sent out to try and find more information, but were unsuccessful.  According to documentation in his file, counsel did not learn about Defendant's Plant City alibi until June 16, 1999, almost a year after telling his attorney that he was in Largo.  Counsel stated he did not feel Defendant provided enough information to assist an investigator and Defendant never mentioned the alibi again.

Defendant took the stand and testified that he did not know his alleged alibi witness.  Defendant stated that he was a middle-aged, short haired, Christian man.  Defendant stated he talked with the man for approximately two and a half hours.  Defendant was unable to recall exactly what time he arrived at the property.  He believed it was 6:00 or 6:30 p.m..  Defendant stated that he was confused when he told his attorney he was painting a sign at a pizza place in Largo.  Defendant stated there was so much going on in his life at the time.

The Court finds that Defendant's recollection was somewhat fuzzy.  Counsel, on the other hand, documented conversations with Defendant in his file.  Defendant initially told his attorney that he was painting a sign at a pizza place in Largo at the time of the robbery, however he was unable to give any more detail.  Almost a year later, Defendant changed his alibi, claiming he was in Plant City at his grandparents' old property.  Defendant, however, was unable to provide any names, addresses or useful information to assist his attorney.  Counsel for Defendant therefore cannot be said to have been deficient for

---

[12] The robbery occurred on May 30, 1997.  According to counsel's file, Petitioner advised counsel of this alibi over one year after the crime occurred.

> failing to locate or present an alibi witness at trial when the information he had
> to work with was scant at best.

(Dkt. #11, Ex. 18).  To obtain relief on ground six, Petitioner must establish that the state

court unreasonably applied *Strickland*[13] or unreasonably determined the facts in denying his

Rule 3.850 motion.

The record supports the trial court's denying this claim (Dkt. #11, Ex. 17).  Petitioner

presents no evidence of entitlement to relief.  *See Hill v. Lockhart*, 474 U.S. 52 (1985)

(conclusory allegations of ineffective assistance of counsel are insufficient to raise a

constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague,

conclusory, or unsupported allegations cannot support an ineffective assistance of counsel

claim).  Petitioner fails to meet his burden of proving that the state court's determination is

an unreasonable application of controlling Supreme Court precedent or an unreasonable

determination of the facts.

**Ground Seven**

Petitioner alleges that his trial counsel rendered ineffective assistance by failing to

present exculpatory evidence.  Specifically, Petitioner claims that counsel should have

obtained his dental records to refute the victim's statement that the perpetrator was missing

his front bottom teeth.  The state court rejected this claim as follows:

---

[13] Although the state trial court failed to cite *Strickland* as the standard for ineffective assistance, no explicit citation is required.  A state court need not cite Supreme Court precedent (or even be aware of it) if the decision is consistent with the precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003).  In Florida, *Strickland* governs ineffective assistance of counsel claims.  *Walls v. State*, 926 So.2d 1156 (Fla. 2006).

Defendant alleges that counsel was ineffective for never presenting dental records or the testimony of his dentist to show that defendant did not have his bottom teeth removed until 1998, after the robbery. Defendant argues that this information could have been used to impeach the victim who stated the robber was missing his bottom teeth at the time of the crime. This claim, however, is without merit. The victim testified that Defendant had crooked teeth and gaps and may have been missing a couple. After viewing Defendant's teeth at the trial, the victim further testified that Defendant was not missing all of the teeth at the time of the robbery, as he was at the trial. Officer Skinner testified that the victim described the robber as having gapped bottom teeth. It is clear from the dental records submitted by Defendant with his motion that he had many problems with his teeth. It is also clear that the victim described the robber as someone with less than perfect teeth. The fact that Defendant reportedly had his two bottom teeth removed in 1998 would not have contradicted the victim's testimony that the robber's teeth were gapped at the time of the robbery in 1997. Defendant fails to show how he was prejudiced by counsel's alleged omission. This claim is denied.

(Dkt. #11, Ex. 15) (court's citations to the record omitted).

Contrary to Petitioner's assertion, Brown did not testify that the robber was definitely missing teeth. At trial, Brown testified as follows:

PROSECUTOR: Did you notice anything about his teeth?

BROWN: As he was talking, he was talking very rapidly and he was, you know, just kind of going on and I did pick up that there was something not right about his teeth. Either it was his teeth were crooked or there were gaps in between them. Maybe he was missing a couple, but there was definitely gaps and crookedness in his teeth that I picked up on as he was talking.

PROSECUTOR: Do you remember? I mean, are you able to specifically say which tooth, uppers, bottom, whatever?

BROWN: Oh, I'm sorry. It was more the bottom teeth.

(Dkt. #11, Ex. 24, Vol. III, p. 50).  Officer Skinner testified that when he asked Brown for a description of the robber at the scene of the crime, Brown stated that the robber's "two bottom front teeth were gapped" (Dkt. #11, Ex. 24, Vol. III, p. 91).

Petitioner fails to demonstrate prejudice, as the dental records do not discredit Brown's description of the robber.  Even if counsel was deficient for failing to present Petitioner's dental records, Petitioner has not shown that the jury would have acquitted him absent this error.  *Strickland v. Washington*, 466 U.S. at 694.  Consequently, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts.

**Ground Eight**

Petitioner alleges that his trial counsel rendered ineffective assistance by failing to impeach Brown.  Petitioner contends "[n]ot only are [sic] there a very substantial amount of these contradictions/inconsistencies given by this alleged victim/witness to police, in her deposition, suppression hearing and in trial, these contradictions/inconsistencies are of an enormous scale given the fact that they all pertain to the physical description of only one person" (Dkt. #1, p. 15).  The state court rejected this claim as follows:

> Defendant alleges that counsel was ineffective for failing to impeach the victim on numerous inconsistencies.  Specifically, Defendant argues that the victim changed her testimony with regard to the robber's clothes, hair, facial hair and acne.  Contrary to Defendant's contention, however, counsel cross-examined witnesses on all of these subjects.  The jury was made aware of the inconsistencies in the victim's testimony and Defendant's claim of ineffectiveness is without merit.  The claim is denied.

(Dkt. #11, Ex. 15).  The record supports the trial court's denial of this claim.

Contrary to Petitioner's contention, defense counsel cross-examined Brown at trial about her inconsistent descriptions of the robber given immediately after the crime, at deposition, and at the suppression hearing (Dkt. #11, Ex. 24, Vol. III, pp. 63-78).  The jury was aware of these inconsistencies.  Petitioner's claim lacks merit and warrants no relief.

**Ground Nine**

Petitioner alleges that his trial counsel rendered ineffective assistance by failing to object to the trial court sending the case to the jury after granting Petitioner's motion for judgment of acquittal on the firearm element of the charge.  The state court rejected this claim as follows:

> Defendant alleges that counsel was ineffective for failing to object when the Court submitted Defendant's case to the jury after a judgment of acquittal was granted.  This claim is without merit.  A judgment of acquittal was granted as to the charge of robbery with a firearm or deadly weapon.  The Court, however, was not foreclosed from finding that there was enough evidence to send the case to the jury on the lesser-included charge of strong-arm robbery.  See Smith v. State, 259 So.2d 498 (Fla. 1st DCA 1972).  In fact, counsel recognized this and specifically argued that the evidence, at most, could support a charge of strong-arm robbery.  Even without counsel's agreement, the Court was free to find that the evidence was consistent with a category one, lesser offense.  Counsel, therefore, cannot be said to have been deficient.  This claim is denied.

(Dkt. #11, Ex. 15).

"The courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." *Lynch v. State*, 293 So.2d 44, 45 (Fla. 1974).  The trial court determined that the evidence would not support a charge of armed robbery and granted the

motion for judgment of acquittal as to that charge, but denied the motion as to the lesser offense of robbery (Dkt. #11, Ex. 24, Vol. III, pp. 152, 163).  Brown's testimony alone was sufficient to send the case to the jury on the lesser offense of robbery.

Petitioner's contention that counsel conceded Petitioner's guilt during counsel's argument on the motion for judgment of acquittal likewise lacks merit.  Counsel argued that the State failed to establish a prima facie case on the charged offense.  Counsel further moved for acquittal as to the alleged weapon, arguing that the State failed to present evidence that a weapon was used.  Counsel argued that "the Court is required under the circumstances to grant the judgment of acquittal for armed robbery down to strong arm robbery, a second degree felony.  I don't think there's any objective articulate evidence in the record upon which cases stand for any of those greater charges involving any weapon, deadly weapon or firearm" (Dkt. #11, Ex. 24, Vol. III, pp. 151-52).  Counsel did not concede that Petitioner was guilty of strong-arm robbery.  Rather, counsel's argument was that the evidence, at most, could only support a charge of strong-arm robbery rather than armed robbery.  Petitioner fails to establish that the trial court's denying this ineffective assistance claim was either contrary to or an unreasonable application of *Strickland* or resulted in a decision that is based on an unreasonable determination of the facts.

## Ground Ten

Petitioner alleges a denial of his right to counsel at the evidentiary hearing on his Rule 3.850 motion.  Petitioner contends that the trial court's denial of his motion to appoint counsel to represent him at the evidentiary hearing violated his right to due process.

"There is no constitutional right to an attorney in state post-conviction proceedings."

*Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (*citing Pennsylvania v. Finley*, 481 U.S.

551 (1987); *Murray v. Giarratano*, 492 U.S. 1 (1989) (applying rule to capital cases)).   A

prisoner has no due process right to appointed counsel in a post-conviction proceeding.

*Pennsylvania v. Finley*, 481 U.S. at 555-56.   Accordingly, Petitioner's claim lacks merit and

no relief is warranted.

**Ground Eleven**

Petitioner alleges a denial of his right to an evidentiary hearing on three claims[14] of

his Rule 3.850 motion.   Petitioner alleges that these grounds were meritorious and that the

trial court's  failure to hold an evidentiary hearing on these claims violates his right to due

process.   This claim is not cognizable under § 2254.

A federal court is not the appropriate forum to challenge the process afforded in state

collateral proceedings because the challenge attacks a proceeding collateral to the prisoner's

confinement and not the confinement itself.   *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th

Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's

conviction and sentence, an alleged defect in a collateral proceeding does not state a basis

for habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (a habeas

claim that the state trial court violated a petitioner's due process rights because the court

failed to conduct an evidentiary hearing and to attach to its opinion pertinent portions of the

---

[14] Petitioner presented four claims for relief in his Rule 3.850 motion (Dkt. #11, Ex. 14).  The trial court denied three of the claims without an evidentiary hearing (Dkt. #11, Ex. 15).

record resolved only issues unrelated to the cause of petitioner's detention and stated no basis for habeas relief).

Petitioner's claim challenges the state court's fact-finding process in his motion for post-conviction relief. This is clearly a state law claim challenging the state's application of state procedure that does not rise to the level of a federal constitutional violation. This challenge is an attack on a proceeding collateral to Petitioner's confinement and not the confinement itself. Such a claim is not cognizable on federal habeas corpus review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. at 67. Consequently, Petitioner is not entitled to relief on this ground.

## Ground Twelve

Petitioner alleges that trial counsel rendered ineffective assistance by failing to present exculpatory evidence of Petitioner's eyeglass prescription. Petitioner contends that Brown stated the robber was not wearing glasses. However, Petitioner provided counsel with his eyeglass prescription, demonstrating that Petitioner would have difficulty seeing without his glasses. Petitioner appears to contend that this evidence would have supported his theory that he was not the robber. The state court rejected this claim.[15]

Petitioner presents no evidence of entitlement to relief. *See Hill v. Lockhart*, 474 U.S. 52; *Tejada v. Dugger*, 941 F.2d at 1559. Despite his alleged poor eyesight, Petitioner does not claim that he is required to wear eyeglasses all the time or that he was wearing eyeglasses

---

[15] Petitioner raised this allegation in ground two of his Rule 3.850 motion. In its order denying this claim, the state court failed to specifically address this aspect of Petitioner's claim.

on the day of the offense.  Brown testified at trial that the robber was not wearing glasses

(Dkt. #11, Ex. 24, Vol. III, p. 48).  Counsel has no absolute duty to investigate particular

facts or a certain line of defense.  *Chandler v. United States*, 218 F.3d 1305 at 1317.  Trial

counsel's failure to present Petitioner's eyeglass prescription at trial was not beyond the

range of professionally competent assistance.  *See Strickland v. Washington*, 466 U.S. at 690;

*White v. Singletary*, 972 F.2d at 1220-21.  Petitioner fails to demonstrate that there is a

reasonable probability that the jury would have acquitted him if counsel had presented the

prescription to the jury.  This claim warrants no relief.

**Ground Thirteen**

Petitioner alleges that his appellate counsel rendered ineffective assistance by failing

to  argue on appeal that the trial court erred by sending the case to the jury after granting the

motion for judgment of acquittal on the firearm element of the original charge.  This claim

was raised and summarily rejected[16] by the state appellate court in Petitioner's amended state

habeas petition  (Dkt. #11, Ex. 11).

*Strickland* governs also an ineffective assistance of appellate counsel claim.  *Heath

v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992).  To

establish a claim of ineffective assistance of appellate counsel, a habeas petitioner must show

that appellate counsel performed deficiently and that the deficient performance resulted in

prejudice.  To demonstrate deficient performance, Petitioner must show that appellate

---

[16] The state appellate court's decision warrants deference under Section 2254(d)(1).  *Wright v. Moore*, 278 F.3d at 1254.

counsel's failure to raise the claim of trial court error was outside the range of professionally acceptable performance. *Chandler v. United States*, 218 F.3d at 1312-13. To demonstrate prejudice, Petitioner must show that appellate counsel's deficient performance undermines confidence in the correctness of the result. *Chandler v. United States*, 218 F.3d at 1312-14; *Wellington v. United States*, 314 F.3d 1256, 1260 (11th Cir. 2002).

The record refutes Petitioner's claim. Appellate counsel specifically raised this claim in Petitioner's appellate brief, arguing that "the trial court committed prejudicial reversible error by denying the defense renewed motion for judgment of acquittal as to the lesser charge of robbery after having granted the defense motion for judgment of acquittal as to the original charge of armed robbery with a deadly weapon, i.e., a firearm, made after the State rested" (Dkt. #11, Ex. 1, p.46). Petitioner fails to establish that the state appellate court's denying this claim was either contrary to or an unreasonable application of *Strickland* or resulted in a decision that is based on an unreasonable determination of the facts.

**Ground Fourteen**

Petitioner alleges that his appellate counsel rendered ineffective assistance by failing to  argue on appeal that Petitioner's speedy trial rights under the Interstate Agreement on Detainers[17] ("IAD") were violated.[18] This claim was raised and summarily rejected by the state appellate court in Petitioner's amended state habeas petition (Dkt. #11, Ex. 11).

---

[17] "The Interstate Agreement on Detainers  (IAD) is a compact entered into by 48 States, the United States, and the District of Columbia to establish procedures for resolution of one State's outstanding charges against a prisoner of another State." *New York v. Hill*, 528 U.S. 110, 111 (2000).

[18] The record reflects that Petitioner was extradited from Tennessee to Florida (Dkt. #11, Ex. 24, Vol. I, p. 7; Dkt. #14, Ex. 14) for prosecution on the armed robbery charge.

A state court's failure to observe the speedy trial rule of the IAD is not cognizable on federal habeas review if the defendant failed to both object to the trial date when it was set and demonstrate prejudice as a result of the delay.  *Reed v. Farley*, 512 U.S. 339, 342 (1994) ("We hold that a state court's failure to observe the 120-day rule of IAD Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement."), *Keeling v. Varner*, 142 Fed.Appx. 506 (2d Cir. 2005) (violation of the speedy trial provision of the Interstate Agreement on Detainers is not cognizable on federal habeas review without evidence of prejudice).  Petitioner fails to establish that he objected to the trial date when it was set[19] or that a delay in the commencement of his trial resulted in prejudice. Consequently, appellate counsel was not ineffective for failing to present the claim on appeal and no federal habeas relief is warranted.

To the extent he claims trial counsel improperly waived his state statutory right to a speedy trial[20], Petitioner is not entitled to relief.  "[W]hen a defendant requests a continuance prior to the expiration of the applicable speedy trial time period for the crime with which he is charged, the defendant waives his speedy trial right as to all charges which emanate from

---

[19]  To the extent Petitioner argues that trial counsel waived his speedy trial rights under the IAD without Petitioner's consent, no relief is warranted.  Trial counsel can waive a defendant's right to a trial within the IAD's specified period by agreeing to a trial date outside that time period, even without the defendant's express consent.  *New York v. Hill*, 528 U.S. 110 (2000).  *See also Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001).

[20] Florida's speedy trial rule provides that a defendant charged with a felony shall be brought to trial within 175 days of arrest. Fla. R. Crim. P. 3.191(a).  The speedy trial period commences when a person is taken into custody. Fla. R. Crim. P. 3.191(a).  A person is taken into custody when he is arrested as a result of the conduct or criminal episode that gave rise to the crime charged. Fla. R. Crim. P. 3.191(d).

the same criminal episode." *Stewart v. State*, 491 So.2d 271, 272 (Fla. 1986) (citations omitted).  Any defense request to postpone a case for any time constitutes a motion for a continuance waiving speedy trial rights. *Blackstock v. Newman*, 461 So.2d 1021, 1022 (Fla. 3d DCA 1985).  "The speedy trial rule is a procedural device only and not a constitutional right.  Once the speedy trial rule has been waived, it is supplanted by the constitutional speedy trial period which is measured by tests of reasonableness and prejudice, not specific number of days." *Blackstock v. Newman*, 461 So.2d at 1022 (citations omitted).

The record shows that trial counsel moved to continue (Dkt. #11, Ex. 24, Vol. I, p. 16) Petitioner's trial, which motion was granted.[21]  Petitioner's motion to continue operated as a waiver of his statutory right to a speedy trial.  *Stewart v. State*, 491 So.2d at 272; *Blackstock v. Newman*, 461 So.2d at 1022.  Petitioner fails to show an unreasonable delay in the commencement of trial that resulted in prejudice.  *See Blackstock v. Newman*, 461 So.2d at 1022.  Petitioner fails to establish that appellate counsel rendered ineffective assistance by failing to raise this non-meritorious claim on appeal.  The state appellate court's denial of this claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard.

It is therefore ORDERED AND ADJUDGED that:

1.      Petitioner's petition for the writ of habeas corpus (Dkt. #1) is DENIED.

---

[21] *See* online docket from the Clerk of Court, Pinellas County, Florida, in Case No. CRC9716941CFANO at: http://pubtitlet.co.pinellas.fl.us/servlet/justice.docketdisplay

2.      The Clerk is to enter judgment for Respondent and close this case.

**DONE** and **ORDERED** in Tampa, Florida on February 25, 2008.


JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\PDF TEMP FILE\04-cv-2571.petty mcneil.wpd